IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| China Technology Global Corporation, | NO. C 05-01793 JW |
| Plaintiff(s), | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| Fuller, Tubb, Pomeroy & Stokes, et al., | |
| Defendant(s). | |

## I. INTRODUCTION

This lawsuit arises out of a dispute between Plaintiff China Technology Global Corporation ("Plaintiff") and Defendant Thomas J. Kenan ("Kenan"), Plaintiff's allegedly former attorney, and Defendant Fuller, Tubb, Pomeroy & Stokes ("FTPS") (collectively "Defendants"), Kenan's law firm. Plaintiff asserts against Defendants three state law-based claims for relief: (1) Unlicensed Practice of Law, (2) Legal Malpractice, and (3) Breach of Fiduciary Duty. (See Notice of Removal Ex. B ¶¶ 7-30.) Presently before this Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (FED. R. CIV. P. 12(b)(2)) or, in the Alternative, for Transfer (28 U.S.C. § 1404(a)) (hereinafter "Defendants' Motion," Docket Item No. 10). This Court finds it appropriate, pursuant to Civil L.R. 7-1(b), to take Defendants' Motion under submission, without oral argument, for a decision based upon the papers filed by the parties. For the reasons set forth below, this Court GRANTS Defendants' Motion to Dismiss.

## II. BACKGROUND

Plaintiff was formerly known as DF China Technology, Inc. ("DF China"). (Notice of Removal Ex. B at 1:23-24.) From 1996 to 2004, Kenan, who is of counsel to FTPS, represented DF China. (Notice of Removal Ex. B ¶ 11; Declaration of Thomas J. Kenan in Support of Defendants' Motion, hereinafter "Kenan Decl.," Docket Item No. 11, ¶ 12-13.) Plaintiff alleges that "Defendants failed to appropriately prepare a proxy statement for Plaintiff['s] . . . shareholder meeting in full compliance with the rules and regulations of United States Securities Exchange Commission ('SEC') and the NASDAQ SmallCap Market." (Notice of Removal Ex. B ¶ 12.) Defendants allegedly knew that Plaintiff "had set the shareholders' meeting without sending out [an] appropriate shareholder proxy statement" prior to December 2003. (Notice of Removal Ex. B ¶ 21.) "As a direct consequence of Defendants' failure to prepare a proper shareholder proxy statement," Plaintiff alleges, "Plaintiff['s] . . . common stock was removed from listing on the NASDAQ SmallCap Market and Plaintiff['s] . . . offering of common stock was disallowed." (Notice of Removal Ex. B ¶ 14.) Plaintiff's market value "decreased significantly" and Plaintiff "spent significant amount of attorneys' fees and expenses to appeal NASDAQ's delisting decision and . . . was unsuccessful." (Notice of Removal Ex. B ¶¶ 15-16.)

## III. STANDARDS

**A. Motion to Dismiss for Lack of Personal Jurisdiction (FED. R. CIV. P. 12(b)(2))**

FED. R. CIV. P. 12(b)(2) ("Rule 12(b)(2)") permits defendants to move to dismiss for "lack of jurisdiction over the person[.]" Although defendants move to dismiss, plaintiffs bear the burden of establishing jurisdiction. Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002) (citing KVOS, Inc. v. Assoc. Press, 299 U.S. 269, 278 (1936)). When, as here, a district court acts on a defendant's Rule 12(b)(2) motion without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995) (citing Pac. Atl. Trading Co. v. M/V Main Exp., 758 F.2d 1325, 1327 (9th Cir.1985) and Data Disc, Inc. v. Systems Technology Assocs., 557 F.2d 1280, 1285

(9th Cir.1977)). That is, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." Id. (citing Data Disc, 557 F.2d at 1285); see also WILLIAM W. SCHWARZER, A. WALLACE TASHIMA & JAMES M. WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 9:117 (2005) ("In this context, a 'prima facie' showing means that plaintiff has produced admissible evidence which, *if believed*, would be sufficient to establish the existence of personal jurisdiction") (citing, inter alia, Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003)). "[U]ntil an evidentiary hearing or trial on the merits, the complaint's uncontroverted factual allegations must be accepted as true, and any factual conflicts in the parties' declarations must be resolved in plaintiff's favor." SCHWARZER ET AL., supra, § 9:117 (citing, inter alia, Harris Rutsky & Co., 328 F.3d at 1129). However, the court need not assume the truth of mere conclusory allegations. Nicosia v. De Rooy, 72 F. Supp. 2d 1093, 1097 (N.D. Cal. 1999).

**B. Personal Jurisdiction**

Personal jurisdiction refers to a court's power to act upon a defendant so as to subject her to personal liability. See Burnham v. Superior Court, 495 U.S. 604, 608-11 (1990). Where, as here, there is no applicable federal statute governing personal jurisdiction, a district court applies the long-arm statute of the state in which it sits. Terracom v. Valley Nat'l Bank, 49 F.3d 555, 559 (9th Cir. 1995). Because this Court sits in the Northern District of California, this Court applies California's long-arm statute. California's long-arm statute allows the exercise of personal jurisdiction to the fullest extent permitted by due process. Id. Due process requires that defendants have "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Plaintiff bears the burden of establishing that this Court has personal jurisdiction over Defendants. FDIC v. British-Am. Ins. Co., Ltd., 828 F.2d 1439, 1441 (9th Cir. 1987). "Application of the 'minimum contacts' test is not a mechanical exercise. Rather, personal jurisdiction depends on the facts of each case . . . the test being whether, under those facts, the forum state has a sufficient *relationship with the defendant and the litigation* to make it *reasonable* ('fair play') to require him or

3

her to defend the action in a federal court located in that state." SCHWARZER ET AL., supra, § 3:77. Courts in the Ninth Circuit flexibly consider three factors in determining whether specific personal jurisdiction exists: (1) whether the out-of-state defendant purposefully availed itself of the privilege of conducting activities within the forum state; (2) whether plaintiff's claim arises out of the defendant's forum-related activity; and (3) whether the exercise of personal jurisdiction in the particular case is reasonable. Ochoa v. J.B. Martin & Sons Farms, Inc., 287 F.3d 1182, 1188-89 (9th Cir. 2002).

## IV.  DISCUSSION

**A. This Court Has Subject Matter Jurisdiction Over this Lawsuit**

As an initial matter, this Court notes that it has subject matter jurisdiction over this lawsuit. Plaintiff originally filed this lawsuit in Santa Clara County Superior Court. (See Notice of Removal, Docket Item No. 1, ¶ 1, Exs. A-C.) Defendants removed. (See Notice of Removal.) This Court's jurisdiction is based on 28 U.S.C. §§ 1332 (Diversity of Citizenship), 1441 (Removal). Plaintiff is a British Virgin Island corporation with its principal place of business in China.[1] Kenan is an Oklahoma citizen. (Kenan Decl. ¶¶ 2-3.) FTPS is an Oklahoma professional corporation, which operates out of Oklahoma City, Oklahoma. (Kenan Decl. ¶ 5; Declaration of Terry Stokes in Support of Defendants' Motion, hereinafter "Stokes Decl.," Docket Item No. 12, ¶ 2.) All of FTPS's attorneys

---

[1] Plaintiff insinuates that its principal place of business is California, but, notably, it never explicitly so asserts. Illustratively, Plaintiff merely asserts that it "is a British Virgin Islands corporation that does business on a global basis and specifically in the state of California where one of its executive officers is located and does business out of a California office." (Notice of Removal Ex. B ¶ 1.) A "British Virgin Islands corporation that does business . . . in California"? Does Plaintiff *principally* do business in California? See Danjaq, S.A. v. Pathe Communications Corp., 979 F.2d 772, 773-74 (9th Cir. 1992) (holding that, for diversity purposes, foreign corporations are citizens of their places of incorporation *and* their principal places of business). Or, does Plaintiff merely do *some* business there? Plaintiff's allegation, alone, is insufficient to establish that Plaintiff's principal place of business is in California. In fact, as Defendants persuasively point out, Plaintiff's principal place of business appears to be in China. (See Defendants' Reply in Support of Defendants' Motion, hereinafter "Defendants' Reply," Docket Item No. 20, at 2:7-3:22). "Most courts now determine a corporation's principal place of business by examining the entity's 'total activities,' taking into account *all* aspects of the corporation's business, including where its operations are located, where it supervises that business and where it employs persons and conducts its business." SCHWARZER ET AL., supra, § 2:300 (citing, inter alia, Industrial Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1094 (9th Cir. 1990)). Accordingly, this Court concludes that Plaintiff's principal place of business is in China.

4

and employees reside in Oklahoma.  (Kenan Decl. ¶ 5; Stokes Decl. ¶ 4.)  Furthermore, the amount in controversy exceeds $75,000.  (See Notice of Removal Ex. B ¶ 23 ("As [a] result of Defendants' failure . . . , Plaintiff China Technology lost $4.3 million dollars of proceeds . . . and suffered significant decrease in its market value").)

**B. This Court Does Not Have Personal Jurisdiction Over Defendants**

To determine whether this Court has personal jurisdiction over Defendants, this Court must determine whether, under the facts of this case, Defendants have sufficient minimum contacts with California to make it reasonable to require them to defend here.  Int'l Shoe, 326 U.S. at 316.  In this Court's opinion, Defendants' contacts with California are attenuated at best--and do not rise to "sufficient minimum contacts" under Int'l Shoe.  Thus, this Court does not have personal jurisdiction over Defendants.

**1. The References to California in Plaintiff's Complaint Largely Are Vague and Conclusory**

The references to California in Plaintiff's Complaint largely are vague and conclusory.  See Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995) ("[O]nly the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true").  For example, in Paragraph 4 of Plaintiff's Complaint, Plaintiff vaguely and conclusorily alleges that Defendants "did business in . . . California at all times relevant by directing legal affairs of Californians including those of Plaintiff . . . ."  (Notice of Removal Ex. B ¶ 4.)  Plaintiff, however, fails to illustrate this assertion with facts.  (See also Notice of Removal Ex. B ¶¶ 18, 20, 24 (conclusory allegations regarding California law).)

**2. Plaintiff Fails to Demonstrate that Its Claims Arise Out of Defendants' California Contacts**

Even more importantly, Plaintiff fails to demonstrate that its claims arise out of Defendants' California contacts.  See Ochoa, 287 F.3d at 1188 ("[Plainitff's] claim must arise out of or result from the defendant's forum-related activity"); see also Doe v. Nat'l Med. Servs., 974 F.2d 143, 145 (10th Cir. 1992) ("Specific jurisdiction may be asserted if . . . the lawsuit is based upon injuries which

'arise out of' or 'relate to' the defendant's contacts with the state").

### a. Plaintiff's Claims Arise Out of a Defective Shareholder Proxy Statement

Plaintiff's claims arise out of Defendants' failure to prepare a proper shareholder proxy statement. (Notice of Removal Ex. B ¶ 14 ("*As a direct consequence of Defendants' failure to prepare a proper shareholder proxy statement*, Plaintiff['s] . . . common stock was removed from listing on the NASDAQ SmallCap Market and Plaintiff['s] . . . offering of common stock was disallowed") (emphasis added); Notice of Removal Ex. B ¶ 15 ("Plaintiff['s] . . . market value decreased significantly after the delisting causing the price to of Plaintiff['s] . . . stock to decrease substantially"); Notice of Removal Ex. B ¶ 16 ("Plaintiff . . . spent significant amount of attorney's fees and expenses to appeal NASDAQ's delisting decision and . . . was unsuccessful"); Notice of Removal Ex. B ¶ 23 ("*As a result of Defendants' failure to notify Plaintiff . . . of the improper shareholder proxy statement* and to advise Plaintiff . . . to reset the shareholder meeting after a proper proxy statement is resent, Plaintiff . . . lost $4.3 million") (emphasis added); Notice of Removal Ex. B ¶ 27 ("[D]efendants abused the trust and confidence of the plaintiff by failing to follow [P]laintiff through the steps to correctly advise [P]laintiff for a successful NASDAQ listing").) Plaintiff, however, fails to indicate *where* Defendants allegedly failed to prepare a proper shareholder proxy statement.

### b. The Defective Shareholder Proxy Statement Likely Was Not Prepared in California

Paragraph 13 of Plaintiff's Complaint is the closest that Plaintiff comes to alleging that the defective shareholder proxy statement arises from Defendants' California contacts. There, Plaintiff alleges that, "In early 2004, Plaintiff . . . held a shareholders meeting in San Francisco, California. Kenan attended the meeting in person where he and FTPS provided legal services to the shareholders as Plaintiff's corporate counsel." (Notice of Removal Ex. B ¶ 13.) This, however, does not demonstrate that Plaintiff's *claims* (which essentially are for legal malpractice) arise out of Defendants' California contacts. See, infra, Part IV.B.3.

Defendants are Oklahoma citizens. See, supra, Part IV.A. Kenan has practiced law in Oklahoma for the past 39 years. (Kenan Decl. ¶ 3.) During that time, Kenan's "contacts with

1  California have been limited and sporadic and have related to federal securities law issues." (Kenan
2  Decl. ¶ 10; see also Kenan Decl. ¶ 11 (noting that Kenan only has done legal work--all related to
3  federal securities law--for three companies with some relationship with California).) Kenan has
4  "never opined on California law for a client." (Kenan Decl. ¶ 10.) With respect to Kenan's
5  representation of DF China, Kenan communicated principally with Y.S. Kwok, DF China's Corporate
6  Secretary. (Kenan Decl. ¶ 18.) Kenan also occasionally communicated with Aaron Zhu, one of DF
7  China's Executive Directors. (Kenan Decl. ¶ 18.) "Both Mr. Kwok and Mr. Zhu were located in
8  China in this time frame." (Kenan Decl. ¶ 18.) Furthermore, all of Kenan's "invoices for . . . legal
9  services were sent from my [i.e., Kenan's] office in Oklahoma City to China and they were paid by
10 wire transfer from China." (Kenan Decl. ¶ 20.) According to Kenan, "It was my understanding at all
11 times that my e-mail and telephone communications were between Oklahoma and China." (Kenan
12 Decl. ¶ 28.)

13 Similarly, FTPS operates out of an office located in Oklahoma City, Oklahoma. (Stokes Decl.
14 ¶ 2.) FTPS "does not and has never maintained an office outside of Oklahoma . . . ." (Stokes Decl. ¶
15 2.) FTPS's lawyers "are all residents of Oklahoma." (Stokes Decl. ¶ 4.) "They are all licensed to
16 practice law in Oklahoma, but not any other state . . . . The vast majority of [FTPS's] practice relates
17 to Oklahoma matters." (Stokes Decl. ¶ 4; see also Stokes Decl. ¶¶ 11-13 (highlighting FTPS's
18 attenuated California contacts).)

19 In this Court's opinion, Defendants cannot be said to have purposefully availed themselves of
20 the privilege of conducting activities in California. Furthermore, in this Court's opinion, Plaintiff's
21 claims do not arise out of conduct in California. Thus, it would be unreasonable for this Court to
22 exercise personal jurisdiction over Defendants.

**3. The Evidence to Which Plaintiff Cites Does Not Demonstrate that Plaintiff's Claims Arise Out of Defendants' California Contacts**

Plaintiff apparently argues that Defendants, in fact, have had a number of supposed California "contacts." Plaintiff's claims, however, do not *arise out of* these "contacts." For example, Plaintiff alleges that Kenan attended a shareholders' meeting in San Francisco. (Notice of Removal Ex. B ¶

7

1  12.) In March 2004, Kenan indeed attended a shareholders' meeting in San Francisco. (Kenan Decl. ¶
2  25 ("On March 25, 2004, I attended a DF China shareholder's [sic] meeting in San Francisco,
3  California").) However, this Court fails to see how Kenan's mere physical presence at a shareholders'
4  meeting in March 2004 relates to Plaintiff's claims.  Plaintiff's claims arise out of the defective
5  shareholder proxy statement. According to Plaintiff, Defendants knew of it *prior to* December 2003.
6  (Notice of Removal Ex. B ¶ 21.) Thus, Kenan's attendance at the March 2004 shareholders' meeting
7  hardly relates to Defendants' preparation of the defective shareholder proxy statement.

8  Furthermore, Plaintiff argues that "Kenan entered California by fax and phone, and practiced
9  law with the Oakland, California law firm of ReedSmith [sic] on issues of federal securities law."
10  (Plaintiff's Opposition to Defendant's Motion, hereinafter "Plaintiff's Opposition," Docket Item No. 18,
11  at 6:12-14.) To support this argument, Plaintiff cites a number of invoices from the Oakland office of
12  the law firm Reed Smith LLP ("Reed Smith"). (See Frank Fan's Declaration in Support of Plaintiff's
13  Opposition, hereinafter "Fan Decl.," Docket Item No. 19, Ex. F.) These invoices variously state that
14  Reed Smith attorneys conducted "telephone calls" and "conferences" with Kenan. (Fan Decl. Ex. F
15  (Invoice Nos. 1146684, 1160674).) One line also states that a Reed Smith attorney reviewed a fax
16  from Kenan. (Fan Decl. Ex. F (Invoice No. 1160674).) These invoices, however, provide no
17  indication as to the substance of the telephone calls, conferences, and faxes. Furthermore, these
18  invoices are for services provided *after* Defendants' alleged preparation of the defective shareholder
19  proxy statement. These invoices are for services provided in April 2004 and later. However, the
20  defective shareholder proxy statement was prepared prior to December 2003. Accordingly, the
21  services delineated in the invoices could not have related to the *preparation* of the defective
22  shareholder proxy statement. Thus, even if this Court believes the invoices on their faces, Plaintiff
23  cannot demonstrate that its causes of action (which all regard the defective shareholder proxy
24  statement that Kenan allegedly prepared) arise out of Kenan's contacts with Reed Smith in Oakland.

25  Because Plaintiff's causes of action against Defendants do not arise from Defendants'
26  California contacts, this Court does not have personal jurisdiction over them.

27

28                                                                 8

## V. CONCLUSION

For the reasons set forth above, this Court GRANTS Defendants' Motion to Dismiss.

Dated: June 27, 2005

/s/James Ware
JAMES WARE
United States District Judge

05cv1793mtv

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Jessica B. Rudin jrudin@longlevit.com
Jingming (James) Cai jcai@flglawyer.com
Jordan Rojas jrojas@longlevit.com
Joseph P. McMonigle jmcmonigle@longlevit.com

**Dated:  June 27, 2005**                                          **Richard W. Wieking, Clerk**

                                                                                        **By:/s/JWchambers**
                                                                                                **Ronald L. Davis**
                                                                                                **Courtroom Deputy**

**United States District Court**
For the Northern District of California